**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

AMERICAN PROPERTIES, CO., G.P.,

Plaintiff,

v.

Case No. ___________________

THE WELFONT GROUP, LLC,
TAX APPRAISAL GROUP, LLC,
BRYANT ASSET ADVISORS, LLC,
ANDREW BRYANT, and
LYNDA SCULL,

Jury Trial Requested

Defendants.

**COMPLAINT**

Plaintiff, American Properties, Co., G.P., for its complaint against Defendants The Welfont Group, LLC, Tax Appraisal Group, LLC, Bryant Asset Advisors, LLC, Andrew Bryant, and Lynda Scull. would respectfully show unto this Honorable Court as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff American Properties, Co., G.P. ("AMPCO") is a general partnership organized under the laws of the State of Tennessee with a principal place of business in Shelby County, Tennessee. AMPCO's general partner is Underberg Property Management, LLC, a Tennessee limited liability company. The members of Underberg Property Management, LLC are Michael Underberg, Susan Persin, and Barbara Schaffer. Michael Underberg is an adult resident of Memphis, Shelby County, Tennessee. Susan Persin is an adult resident of Scottsdale, Maricopa County, Arizona. Barbara Schaffer is an adult resident

of Atlanta, Fulton County, Georgia. The remaining partners of AMPCO and their respective residences are as follows:

a. Barbara Schaffer. Barbara Schaffer is an adult resident of Atlanta, Fulton County, Georgia.

b. Kyle J. Schaffer Trust. The Kyle J. Schaffer Trust is a grantor trust established under the laws of the State of Tennessee on December 31, 2018. Jason Tessler is the trustee of the Kyle J. Schaffer Trust. Jason Tessler is and adult resident of Dekalb County, Georgia.

c. Joseph L. Schaffer Trust. The Joseph L. Schaffer Trust is a grantor trust established under the laws of the State of Tennessee on December 31, 2018. Jason Tessler is the trustee of the Joseph L. Schaffer Trust.

d. Susan Persin. Susan Persin is an adult resident of Scottsdale, Maricopa County, Arizona.

e. Eli Jacob Persin Trust. The Eli Jacob Persin Trust is a grantor trust established under the laws of the State of Tennessee on December 31, 2018. Susan Persin and Ben Persin are the trustees of the Eli Jacob Persin Trust. Ben Persin is an adult resident of Scottsdale, Maricopa County, Arizona.

f. Spencer Isaac Persin Trust. The Spencer Isaac Persin Trust is a grantor trust established under the laws of the State of Tennessee on December 31, 2018. Susan Persin and Ben Persin are the trustees of the Spencer Isaac Persin Trust.

g. Michael Underberg. Michael Underberg is an adult resident of Memphis, Shelby County, Tennessee.

h. Alexander R. Underberg Trust. The Alexander R. Underberg Trust is a grantor trust established under the laws of the State of Tennessee on December 31, 2018. Jason Tessler is the trustee of the Alexander R. Underberg Trust.

i. Barry R. Underberg Trust. The Barry R. Underberg Trust is a grantor trust established under the laws of the State of Tennessee on December 31, 2018. Jason Tessler is the trustee of the Barry R. Underberg Trust.

j. The Michael Scott Underberg Trust. The Michael Scott Underberg Trust was established upon the death of Ronald P. Underberg pursuant to Ronald P. Underberg's Last Will and Testament. Michael Underberg is the trustee of the Michael Scott Underberg Trust.

k. The Barbara Schaffer Trust. The Barbara Schaffer Trust was established upon the death of Ronald P. Underberg pursuant to Ronald P. Underberg's Last Will and Testament. Barbara Schaffer is the trustee of the Barbara Schaffer Trust.

l. The Susan Persin Trust. The Susan Persin Trust was established upon the death of Ronald P. Underberg pursuant to Ronald P. Underberg's Last Will and Testament. Susan Persin is the trustee of the Susan Persin Trust.

2. Defendant The Welfont Group, LLC ("Welfont") is, upon information and belief, a limited liability company organized under the laws of the State of Delaware with a principal place of business in Tampa, Hillsborough County, Florida with members who reside in a state other than the States of Tennessee, Arizona, and Georgia. Welfont transacts business in the State of Tennessee but is not, nor ever has been, properly registered with the Tennessee Secretary of State as required in order to transact business within the State of Tennessee. Upon information and belief, Welfont has two (2) members, to wit: (1) a natural person domiciled in Florida and (2) Welfont, LLC which is wholly owned by Welfont Companies, Inc., a corporation organized in Delaware with its principal place of business in Florida. Welfont may be served with process through its registered agent, Registered Agents, Inc., 3030 N. Rocky Point Dr., Suite 150A, Tampa, Florida 33607. Welfont may also be served through its registered agent, Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware 19901.

3. Defendant Tax Appraisal Group, LLC ("TAG") is, upon information and belief, a limited liability company organized under the laws of Florida and with a principal place of business in the State of Florida at 701 S. Howard Avenue, Suite 106-260, Tampa, Florida 33606 and with member(s) who reside(s) in a state other than the States of Tennessee, Arizona, and Georgia. TAG transacts business in the State of Tennessee but is not, nor ever has been, properly registered with the Tennessee Secretary of State as required in order to transact business within the State of Tennessee. Upon information and belief, the sole

member of TAG is Defendant Lynda Scull, who is now a resident of Queen Annes County, Maryland. TAG may be served with process through its registered agent, Registered Agents, Inc. 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702.

4. Defendant Bryant Asset Advisors, LLC ("BAA") is, upon information and belief, a limited liability company organized under the laws of the State of Indiana and with a principal place of business in the State of Indiana at 11715 Fox Road, Suite 400-127, Indianapolis, Indiana 46236 with member(s) who reside(s) in a state other than the States of Tennessee, Arizona, and Georgia. BAA transacts business in the State of Tennessee but is not, nor ever has been, properly registered with the Tennessee Secretary of State as required in order to transact business within the State of Tennessee. Upon information and belief, the sole member of BAA is Defendant Andrew Bryant, who is a resident of Hamilton County, Indiana. BAA can be served through its registered agent, Matthew R. Macaluso, Esq., 760 3rd Ave., SW., Suite 210, Carmel, Indiana 46032.

5. Defendant Andrew Bryant is, upon information and belief, an adult resident of Noblesville, Hamilton County, Indiana, who, for purposes of service of process, can be served at his place of business and employment, Bryant Asset Advisors, LLC, 11715 Fox Road, Suite 400-127, Indianapolis, Indiana 46236. Andrew Bryant may also be served at his place of business and employment, Bryant Asset Advisors, LLC, 908 S. 9th St., Noblesville, Indiana 46060.

6. Defendant Lynda Scull is, upon information and belief, an adult resident of the State of Maryland, who, for purposes of service of process, can be served at her place of residence at 1603 Love Point Rd., Stevensville, Maryland 21666-2047.

7. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over each Defendant named herein because each Defendant, either on their own or through their agents, at the time of the commission of the acts alleged hereunder, transacted business in the State of Tennessee, including specific acts within this judicial district, including but not limited to a transaction involving the sale of real property within this district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the litigation occurred in this judicial district; the contract(s) at issue was formed in, and the subject real estate is in, this judicial district; and Plaintiff suffered harm caused by the Defendants in this judicial district.

## GENERAL ALLEGATIONS

10. Prior to May 6, 2019, AMPCO owned that certain real property located at 3685 Hickory Hill Road, Memphis, Shelby County, Tennessee (collectively, the "Property"). The Property is a neighborhood shopping center, comprising approximately 68,029 square feet situated on approximately 6.58 acres. AMPCO had acquired the Property on or about December 19, 1999 for the purchase price of $3,074,146. A true and correct copy of the Special Warranty Deed evidencing AMPCO's purchase of the Property is attached hereto as Exhibit "A" and incorporated herein by reference.

11. AMPCO obtained periodic appraisals of the Property, and on June 7, 2018, it received a restricted appraisal report which concluded that the market value of the Property was $3,390,000. A true and copy of the June 7, 2018 restricted appraisal report is attached hereto as Exhibit "B" and incorporated herein by reference.

12. In or about July 2018, AMPCO listed the Property for sale with an asking price of $3,995,000.

**BUSINESS OF THE WELFONT GROUP, LLC**

13. Welfont markets itself as specializing in providing the nonprofit sector with a wide range of services, including broker representation, advisory, underwriting, due diligence, financial services, asset management and dispositions. Welfont manages each investment itself, from deal sourcing to underwriting, to acquisition and disposition.

14. With respect to the transaction that is subject of this Complaint, Welfont is a real estate broker organization that holds itself out by solicitation, advertisement, or otherwise in Tennessee and elsewhere as facilitating, providing, or arranging for "bargain sales" of real property to charitable organizations for less than fair market value in exchange for the seller's receiving a tax deduction for the difference between the fair market of the property and the cash received from the charitable organization.

15. In order to meet the expectations of both the buyer and the seller in a bargain sale, there must be an appraisal of the subject property that is credible to the Internal Revenue Service ("IRS") and that meets all U.S. Treasury regulations (a "Qualified Appraisal").

16. Welfont utilizes a select network of appraisers to provide Qualified Appraisals for these transactions, including Defendants TAG and/or BAA.

17. Welfont, and/or certain high-level agents and/or employees of Welfont, manage or direct TAG in securing and selecting the appraiser to provide the Qualified Appraisal required for each bargain sale.

18. TAG is a tax appraisal organization that holds itself out by solicitation, advertisement, or otherwise in Tennessee and elsewhere as facilitating, obtaining or arranging for Qualified Appraisals for "bargain sales" of real property to charitable organizations for less than fair market value in exchange for the seller's receiving a tax deduction for the difference between the fair market of the property and the cash received from the charitable organization.

19. Defendant Lynda Scull is the manager of TAG.

20. BAA is a real estate appraisal organization that holds itself out by solicitation, advertisement, or otherwise in Tennessee and elsewhere as providing Qualified Appraisals for "bargain sales" of real property to charitable organizations for less than fair market value in exchange for the seller's receiving tax deduction for the difference between the fair market of the property and the cash received from the charitable organization.

21. Defendant Andrew Bryant is the manager of BAA.

**PRELUDE TO THE DEAL**

22. After seeing AMPCO's listing of Property in July of 2018, Welfont solicited AMPCO and proposed a transaction wherein Welfont would obtain a Qualified Appraisal of the Property in order for AMPCO to sell the Property to a qualified charitable organization that Welfont represented would result in the partners of AMPCO receiving certain tax deductions based upon the difference between the Qualified Appraisal amount and the sales price to the charitable organization. This transaction appeared beneficial to AMPCO and its

partners, so AMPCO agreed to proceed with the Qualified Appraisal and bargain sale based on representations made by Welfont through its members, agents, representatives and/or employees, including, but not limited to, Taylor Weaver, Savanna Audino, Christina Demery, and Rachel Shelley.

23. Welfont also advised that it represented a qualified charitable organization, Food Assistance, Inc. (the "Charity Buyer" or "Buyer"), for purposes of the bargain sale, and thereby brought Charity Buyer into the deal as the proposed 501(c)(3) organization to purchase the Property in the contemplated bargain sale for less than the fair market value as determined by the Qualified Appraisal, thus, completing the bargain sale.

24. Welfont further explained and represented, and the parties herein all understood, that the actual beneficiaries of the tax benefits resulting from the bargain sale would be AMPCO's general partners.

25. Unbeknownst to AMPCO (but known to Welfont and Buyer Charity), Buyer Charity, as seller, and with Welfont as its broker, was in the process of negotiating a subsequent sale of the Property to Hickory Hill Properties, LLC at a price substantially less than fair market value but substantially more than the cash received by AMPCO from Charity Buyer in connection with the bargain sale.

## REAL ESTATE PURCHASE AGREEMENT

26. On or about December 4, 2018, Welfont provided to AMPCO a "Brokers Opinion of Value" in which Welfont represented to AMPCO that it could obtain a Qualified Appraisal of the Property in the amount of approximately $5,542,000 and facilitate a bargain sale of the Property to a charitable organization that would result in a tax deduction to AMPCO, consisting of the difference between $5,542,000 and the cash paid by the buyer. A

true and correct copy of the December 4, 2018 Brokers Opinion of Value is attached hereto as Exhibit "C" and incorporated herein by reference.

27. On or about January 7, 2019, Welfont prepared and presented to AMPCO a Real Estate Purchase Agreement with Charity Buyer pursuant to which Welfont agreed to obtain a Qualified Appraisal of the Property of approximately $5,388,000 and at least $5,118,6000 and, in exchange, AMPCO would sell the Property to Charity Buyer for $2,000,000 and pay Welfont a sales commission of $62,403 (the "Purchase Agreement"). The Purchase Agreement was later amended on or about April 19, 2019 to increase the purchase price by $160,000 to $2,160,000. A true and correct copy of the Purchase Agreement, as amended, is attached hereto as Exhibit "D" and incorporated herein by reference.

**THE APPRAISAL REPORT**

28. On or about March 11, 2019, Welfont introduced AMPCO to Defendants TAG and Lynda Scull, who Welfont represented would obtain the Qualified Appraisal of the Property required in order to complete the contemplated bargain sale.

29. On or about March 14, 2019, AMPCO and TAG entered into a written agreement prepared by TAG and presented to AMPCO wherein TAG agreed to obtain a Qualified Appraisal of the Property and, in exchange, AMPCO agreed to, and did, pay TAG consideration of $1,000 (the "TAG Contract"). Among other obligations, the TAG Contract required TAG to "[m]anage order progress and workflow" of TAG's selected appraiser and to "[c]onduct pre and post-delivery quality control" throughout the appraisal process. A true and correct copy of the TAG Contract is attached hereto as Exhibit "E" and incorporated herein by reference.

30. Also, on or about March 11, 2019, TAG introduced AMPCO to Defendants BAA and its principal, Andrew Bryant, who represented they would provide the Qualified Appraisal of the Property required in order to complete the contemplated bargain sale.

31. BAA agreed to provide a Qualified Appraisal Bargain Sale Opinion of Value based on IRS Publication 561 of the Property and, in exchange, AMPCO agreed to, and did, pay BAA consideration of $7,500 (the "BAA Contract"). A true and correct copy of the BAA Contract is attached hereto as Exhibit "F" and incorporated herein by reference.

32. On or about March 26, 2019, Defendant Andrew Bryant applied to the State of Tennessee Real Estate Appraiser Commission and was issued a Temporary Practice Permit for the contemplated sale, Id. Number 58857.

33. On or about April 9, 2019, Defendants BAA and Andrew Bryant provided AMPCO an appraisal of the Property in the amount of $4,755,000 (the "BAA Appraisal"). A true and correct copy of the April 9, 2019 BAA Appraisal is attached hereto as Exhibit "G" and incorporated herein by reference.

34. Unbeknownst to AMPCO, however, the BAA Appraisal was not prepared in conformity with the requirements of the Uniform Standards of Professional Appraisal Practice; Financial Institutions, Reform, Recovery and Enforcement Act of 1989; IRS Publication 561; and the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

35. Welfont, at all pertinent times hereto, orchestrated and managed the appraisal process.

**THE TRANSACTIONS**

36. In reliance upon the BAA Appraisal and other representations of Defendants set forth herein, on May 6, 2019, AMPCO sold the Property to Charity Buyer for $2,160,000 and thereafter claimed a deduction of $2,595,000 from the bargain sale on its 2019 tax returns.

37. Contemporaneously on May 6, 2019, Hickory Hill Properties, LLC, an entity which, upon information and/or belief, is affiliated with and/or the alter ego of Welfont, purchased the Property from Charity Buyer for $2,650,000, thereby effectively undermining the fair market value of $4,755,000 set forth in the BAA Appraisal and the related representations of all Defendants.

38. As AMPCO later learned, Hickory Hill Properties, LLC had entered into the Purchase Agreement on February 15, 2019 with Charity Buyer to purchase the Property for $3,000,000. Welfont coordinated on behalf of Hickory Hill Properties, LLC's Chief Manager Denis Rodger to inspect the Property on February 27, 2019, and the purchase price was ultimately reduced to $2,650,000 due to rental discrepancies.

**THE IRS AUDIT**

39. AMPCO reported the sale of the Property on Form 4797 and reported a $1,098,138 gain with a sales price of $2,160,000 and a cost basis of $1,061,862.

40. AMPCO reported the bargain sale on Form 8283 and reported the appraised value of the Property as being $4,755,000 as set forth by the BAA Appraisal, Welfont's representations, and the representations of the other named Defendants.

41. On AMPCO's 2019 Federal Tax Return, Form 106, Schedule D, Line 13A-Contributions, AMPCO deducted $2,595,000 as a charitable deduction predicated on, and in

reliance of, the BAA Appraisal and the purported "bargain sale" transaction marketed and effectuated by Defendants.

42. The IRS subsequently audited AMPCO's 2019 tax returns. Thereafter, on or about September 10, 2021, the IRS made a determination, in part based upon the contemporaneous purchase and sale of the Property to Hickory Hill Properties, LLC, that the BAA Appraisal was not a Qualified Appraisal (the "IRS Initial Determination"), despite prior representations from Defendants to the contrary. In fact, the IRS's Initial Determination was the first date in which AMPCO learned or discovered that the BAA was not a Qualified Appraisal. In conjunction with the IRS Initial Determination, the IRS also issued APMCO a Form 5701 - Notice of Proposed Adjustment in seven (7) parts, identified as Issue Number 5701-1, 5701-2, 5701-3, 5701-4, 5701-5, 5701-6, and 5701-7, including Form 886-A - Explanation of Items identified as 886A, 886A-1, 886A-2, 886A-3 and 886A-4. A true and correct copy of the IRS Initial Determination is attached hereto as Exhibit "H" and incorporated herein by reference.

43. As part of the IRS Initial Determination, on September 10, 2021, the IRS submitted to AMPCO a series of seven (7) FORM 5701 detailing its findings and proposed adjustments to AMPCO's 2019 tax return in which the IRS found, *inter alia,* that the Property had a fair market value of $2,650,000 as determined by the revenue agent. As a result, AMPCO's allowable, deduction contribution from the sale of the Property is posited by the IRS to require reduction from $2,595,000 to $490,000, or a loss of $2,105,000 to AMPCO in deductions.

44. After making other adjustments on its 2019 tax returns and applying accuracy-related penalties, if the IRS Initial Determination is upheld based on the IRS senior

appraiser Bobe's valuation of fair market value of $3,200,000, AMPCO will suffer actual damages in the amount of at least $571,765 that AMPCO will be required to pay in taxes, plus reasonable attorneys' fees, accountant fees, expenses, and other costs incurred in this matter, all directly and proximately caused by Defendants' acts described herein as a result of the BAA Appraisal not being a Qualified Appraisal.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

45. AMPCO incorporates herein by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

46. AMPCO and Welfont were parties to an agreement, which was a legally enforceable and binding contract pursuant to which Welfont agreed to obtain a Qualified Appraisal of the Property of approximately $5,388,000 and at least $5,118,600.

47. Although AMPCO fully performed its obligations thereunder, Welfont breached its obligations under the agreement by failing to obtain a Qualified Appraisal of the Property.

48. AMPCO and TAG were parties to the TAG Contract, which was a legally enforceable and binding contract, pursuant to which TAG agreed to obtain a Qualified Appraisal of the Property of approximately $5,388,000 and at least $5,118,6000.

49. Although AMPCO fully performed its obligations thereunder, TAG breached its obligations under the TAG Contract by failing to obtain a Qualified Appraisal of the Property.

50. AMPCO and BAA were parties to the BAA Contract, which was a legally enforceable and binding contract, pursuant to which BAA agreed to provide a Qualified Appraisal of the Property.

51. Although AMPCO fully performed its obligations thereunder, BAA breached its obligations under the BAA Contract by failing to provide a Qualified Appraisal of the Property.

52. Welfont's breaches of the Welfont Contract, TAG's breaches of the TAG Contract, and BAA's breaches of the BAA Contract, have caused AMPCO actual damages, including but not limited to actual damages in an amount no less than $895,486.00, prejudgment interest at 8.75% on the foregoing amount, plus costs and reasonable attorneys' fees, which AMPCO is entitled to recover from Defendants.

**SECOND CAUSE OF ACTION**
(Negligent Misrepresentation)

53. AMPCO incorporates herein by referenced the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

54. During the course of its service as broker for AMPCO, Welfont represented to AMPCO that (a) the Property had a fair market value of approximately $5,388,000, (b) it would obtain a Qualified Appraisal of the Property showing a fair market value of approximately $5,388,000 that would allow AMPCO to sell to Charity Buyer and obtain a tax deduction of the different between $5,388,000 and the amount paid by the Charity Buyer, and (c) TAG would obtain a Qualified Appraisal of the Property showing a fair market value of approximately $5,388,000 that would allow AMPCO to sell to the Charity Buyer and obtain a tax deduction of the difference between $5,388,000 and the cash paid by the Charity Buyer.

55. During the course of its service as a tax appraisal locator for AMPCO, TAG represented to AMPCO that it would obtain a Qualified Appraisal of the Property showing a fair market value of approximately $5,388,000 that would allow AMPCO to obtain a tax deduction of the difference between $5,388,000 and the cash paid by the Charity Buyer.

56. During the course of its service as an appraiser for AMPCO, BAA represented to AMPCO that it had provided a Qualified Appraisal of the Property showing a fair market value of approximately $5,388,000 that would allow AMPCO to obtain a tax deduction of the difference between $5,388,000 and the cash paid by the Charity Buyer.

57. Welfont, TAG, and BAA each had a strong, pecuniary interest in making the foregoing representations (collectively, the "Representations") to AMPCO so that AMPCO would pay them, purchase the BAA Appraisal, and sell the Property to Charity Buyer.

58. Each of the Representations made by Welfont, TAG and BAA were materially false.

59. Welfont, TAG, and BAA were negligent, grossly negligent, reckless, willful, and/or wanton in making the Representations to AMPCO.

60. AMPCO reasonably relied on Welfont's, TAG's, and BAA's Representations to AMPCO's detriment.

61. As a direct and proximate result of its reasonable reliance on the foregoing Representations by Welfont, TAG and BAA, AMPCO has suffered considerable pecuniary loss in an amount to be determined at trial, but certainly well in excess of $75,000, plus prejudgment interest at 8.75%, costs, expenses and reasonable attorneys' fees which AMPCO is entitled to recover from Welfont, TAG, and BAA.

62. Welfont, TAG, and BAA are liable to AMPCO for all of AMPCO's damages flowing from the injury caused by their negligent misrepresentations.

63. Moreover, Welfont, TAG, and BAA acted with reckless disregard to the truth of the Representations entitling AMPCO to punitive damages against each in an amount to be determined by the jury.

**THIRD CAUSE OF ACTION**
(Fraud/Constructive Fraud)

64. AMPCO incorporates herein by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

65. Welfont, which holds itself out as an expert in real estate transactions and bargain sales, made the aforesaid Representations which it knew to be false.

66. Upon information and belief, at the time it made the Representations and at the time AMPCO sold the Property to Charity Buyer and paid Welfont its commission, Welfont intended to purchase the Property from Charity Buyer and sell the Property to a third party for less than the BAA Appraisal (the "Welfont Plan"), even though Welfont knew that the Welfont Plan would render the BAA Appraisal a non-Qualified Appraisal.

67. Welfont had a duty to disclose the Welfont Plan to AMPCO.

68. Welfont failed to disclose the Welfont Plan to AMPCO.

69. Welfont acted to intentionally conceal its misrepresentations and the Welfont Plan from AMPCO.

70. The Representations made by Welfont and the Welfont Plan were all material to AMPCO; Welfont knew or should have known of the falsity of these Representations, AMPCO relied upon those Representations and Welfont' s failure to disclose the Welfont Plan; AMPCO's reliance was reasonable and it had the right to rely; and AMPCO's reliance caused it serious damage.

71. As a direct and proximate result of AMPCO's reliance upon Welfont's misrepresentations and non-disclosure of the Welfont Plan, AMPCO has suffered actual damages in an amount to be determined, but certainly well in excess of $75,000, plus

prejudgment interest at 8.75%, costs, expenses and reasonable attorneys' fees which AMPCO is entitled to recover from Welfont.

72. Upon information and belief, Welfont's conduct was sufficiently willful, wanton, reckless, grossly negligent, and outrageous to entitle AMPCO to punitive damages in an amount to be determined by a jury, for which Welfont is liable.

**FOURTH CAUSE OF ACTION**
(Negligence)

73. AMCPO incorporates herein by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

74. Welfont had a duty to AMPCO to use reasonable care to ensure that the BAA Appraisal was a Qualified Appraisal and to not undermine same, but breached its duties to AMPCO and was negligent, grossly negligent, reckless, willful, and/or wanton, including but not limited to, by:

a. Failing to ensure that the BAA Appraisal was a Qualified Appraisal; and
b. Buying and then selling the Property at prices far below the BAA Appraisal within a short period of time following AMPCO's sale of the Property to Charity Buyer.

75. TAG had a duty to AMPCO to use reasonable care to ensure that the BAA Appraisal was a Qualified Appraisal, but breached its duties to AMPCO and was negligent, grossly negligent, reckless, willful, and/or wanton, including but not limited to by failing to ensure that the BAA Appraisal was a Qualified Appraisal.

76. BAA had a duty to AMPCO to use reasonable care to ensure that the BAA Appraisal was a Qualified Appraisal, but breached its duties to AMPCO and was negligent,

grossly negligent, reckless, willful, and/or wanton in failing to ensure that the BAA Appraisal was a Qualified Appraisal, including but not limited to by:

a. Failing to address BAA's market area knowledge of the Property in the BAA Appraisal;

b. Using an exposure time of 36 to 48 months instead of "as is" conditions in the BAA Appraisal;

c. Failing to define "fair market value" to encompass the notion of a willing buyer and willing seller in the BAA Appraisal;

d. Stating that the BAA Appraisal was higher than a "561 appraisal," even though the IRS has no "561 appraisal";

e. Misapplying IRS Publication 561 in the BAA Appraisal; and

f. Failing to have both appraisers who contributed to the BAA Appraisal sign it as required by U.S. Treasury regulations.

77. Welfont's, TAG's, and BAA's negligence, gross negligence, willfulness, and/or wantonness as aforesaid was the proximate cause of the damages suffered by AMPCO.

78. Welfont's, TAG's, and BAA's negligence, gross negligence, willfulness, and/or wantonness as aforesaid has caused AMPCO actual damages in an amount to be determined, but certainly well in excess of $75,000, plus prejudgment interest at 8.75%, costs, expenses and reasonable attorneys' fees which AMPCO is entitled to recover from Welfont, TAG, and BAA along with punitive damages from Welfont, TAG, and BAA.

**<u>FIFTH CAUSE OF ACTION</u>**

(Violations of Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et. seq*.)

79. AMCPO incorporates herein by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

80. Defendants misrepresented material facts concerning Defendants' ability to obtain a Qualified Appraisal on behalf of AMPCO and as required under the bargain sale to Charity Buyer, with the intent to mislead AMPCO and coerce AMPCO into the Welfont Plan for profit.

81. Defendants' conduct and misrepresentations described herein constitute unfair or deceptive acts and practices declared unlawful by the Tennessee Consumer Protection Act (the "TCPA"), Tenn. Code Ann. § 47-18-101 *et. seq.*, and particularly Tenn. Code Ann. § 47-18-104(b)(5), (6), and (9).

82. Defendants knowingly made false and/or misleading representations of fact for the purpose of deceiving AMPCO about Defendants' services and abilities to achieve the Welfont Plan and for the purpose of obtaining compensation from AMPCO, in violation of the TCPA.

83. As a result of the unfair and deceptive acts in which Defendants engaged, AMPCO has suffered damages in an amount to be determined at trial but certainly no less than the amount of $75,000.

84. Defendants are liable for treble damages pursuant to Tenn. Code Ann. § 47-19-109(b) as a result of the willful and knowing use of unfair and deceptive acts and practices, plus attorney's fees and costs pursuant to Tenn. Code Ann. § 47-18-109(b).

## SIXTH CAUSE OF ACTION
(Veil Piercing)

85. AMPCO incorporates herein by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

86. AMPCO alleges upon information and belief that Defendants Andrew Bryant and Lynda Scull should be held liable for any conduct attributable to Defendants BAA and TAG because they operated as the alter ego of BAA and TAG, respectively.

87. AMPCO alleges upon information and belief that Defendants Andrew Bryant and Lynda Scull, at the time the Representations were made, exercised complete dominion and control over Defendants BAA and TAG, not only of finances, but of policies and business practices with respect to the Representations, such that Defendants BAA and TAG had no separate mind, will or existence of their own with respect to the Representations.

88. Defendants Andrew Bryant and Lynda Scull used their dominion and control over Defendants BAA and TAG as conduits for performing their businesses and for perpetuating their fraudulent acts as described herein.

89. Upon information and belief, Defendants BAA and TAG were grossly undercapitalized such that they could not pay their respective debts and liabilities.

90. Upon information and belief, Defendants BAA and TAG diverted all their earnings and other tangible assets to Defendants Andrew Bryant and Lynda Scull, individually.

91. Based on the allegations as described herein, Defendants Andrew Bryant and Lynda Scull have used the appearance of corporate formalities and corporate separateness to commit fraud and deceit upon AMPCO in contravention of public policy.

92. AMPCO has sustained significant injuries and loss as a direct and proximate cause of Defendants BAA and TAG being used as instrumentalities to default and otherwise wrong AMPCO.

93. As such, the corporate veil of BAA and TAG should be disregarded and AMPCO should be allowed to collect its judgment from Defendants Andrew Bryant and Lynda Scull, individually, as well as from any and all of their entities.

**SEVENTH CAUSE OF ACTION**
(Civil Conspiracy)

94. AMPCO incorporates herein by reference the foregoing paragraphs of this Complaint to the extent consistent with this cause of action.

95. Each Defendant, individually, and in a concerted action, have committed numerous predicate torts and crimes against AMPCO, including at least the following. Breach of Contract; Negligent Misrepresentation; Fraud; Constructive Fraud; Negligence; and/or TCPA violations.

96. There was a common design among the Defendants, with each having the intent and knowledge of the other's intent, to accomplish by concerted action an unlawful purpose or lawful purpose by unlawful means. The unlawful purpose was to mislead AMPCO in order to induce AMPCO into the Welfont Plan and to profit from the Welfont Plan with full knowledge of Defendants' inability to obtain a Qualified Appraisal as required by the contemplated bargain sale in order to achieve the applicable deduction that Defendants represented to AMPCO it could obtain.

97. Each of these Defendants made an overt act in furtherance of the conspiracy, i.e., the Welfont Plan, in order to induce AMPCO into Defendants' scheme for profit.

98. As a result of Defendants' actions, AMPCO has sustained significant monetary damages to be proven at trial but in an amount no less than $75,000 plus costs and attorney's fees.

## JURY DEMAND

99. AMPCO respectfully prays for a trial by jury.

**WHEREFORE**, AMPCO prays that this Court enter judgment in favor of AMPCO and jointly and severally against The Welfont Group, LLC, Tax Appraisal Group, LLC, Bryant Asset Advisors, LLC, Andrew Bryant, and Lynda Scull for all losses and damages sustained, as set forth more fully above, and awarding AMPCO:

(a) Actual damages, in an amount to be determined, but certainly well in excess of $75,000;

(b) Prejudgment interest on the compensatory damages at the then-available maximum legal rate;

(c) Post-judgment interest on the compensatory damages at the then-available maximum legal rate;

(d) Punitive damages;

(e) Additional tax liability, interest and penalties assessed to AMPCO and/or its partners;

(f) AMPCO's reasonable attorneys' fees, expenses and costs;

(g) AMPCO's professional accounting, legal, appraisal and other fees incurred by AMPCO in connection with the IRS examination;

(h) Such other legal or equitable relief as AMPCO shall show itself justly entitled and/or that this Court deems just and proper.

Dated: May 26, 2022

Respectfully submitted,

**EVANS PETREE PC**

/s/Brian L. Yoakum
Brian L. Yoakum (TN Bar No. 024811)
Regan S. Steepleton (TN Bar No. 036933)
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120
(901) 525-6781
byoakum@evanspetree.com
rsteepleton@evanspetree.com
*Attorneys for Plaintiff*