IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AMERICAN PROPERTIES, CO. G.P., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:22-cv-02329-SHL-tmp |
| THE WELFONT GROUP, LLC, TAX APPRAISAL GROUP, LLC, and LYNDA SCULL, | ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff's Motion for Default Judgment, (ECF No. 43), filed November 1, 2022. A hearing on the Motion was held on January 19, 2023. (ECF No. 48.) After the Court took the matter under advisement, it held a status conference on September 12, 2023. (ECF No. 65.) Plaintiff's Motion seeks entry of judgment in the amount of $1,321,013, which it asserts may be reduced "[i]f and when Plaintiff's damages are reduced by the results of Plaintiff's Administrative Appeal to the Internal Revenue Service and by Plaintiff's Push-out Election." (ECF No. 43 at PageID 381.)

For the following reasons, the Motion is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. The Motion is **GRANTED** to the extent it seeks a determination that Defendants are liable to Plaintiff. To the extent the Motion seeks a determination of the specific amount of Plaintiff's damages, the Motion is **DENIED WITHOUT PREJUDICE**. Rather than enter judgment in an amount that may change based on the pending IRS appeal, the Court will make a determination of Plaintiff's damages upon

conclusion of the appeal after consideration of Plaintiff's filing of a supplemental Motion for Default Judgment and any further proceedings which should occur.

## BACKGROUND

The following facts, drawn from Plaintiff's Complaint, (ECF No. 1), are deemed admitted by virtue of Defendants' default. See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110-11 (6th Cir. 1995).

In short, Plaintiff asserts that it sold real property below market value based on Defendants' false representation that it would receive a substantial tax deduction for doing so. Specifically, Plaintiff asserts that it owned real property located at 3685 Hickory Hill Road, Memphis, Tennessee (the "Property") that, as of June 2018, had a fair market value of $3,390,000. (ECF No. 1 at PageID 5–6.) Defendant The Welfont Group, LLC ("Welfont"), proposed a transaction whereby Welfont would obtain a Qualified Appraisal of the Property to allow Plaintiff to sell the Property to a qualified charitable organization. (Id. at PageID 7.) Plaintiff could then receive a tax deduction for the difference between the fair market value of the Property and the cash received from the charitable organization in the sale. (Id.) In January 2019, Welfont prepared a Real Estate Purchase Agreement whereby Welfont agreed to obtain a Qualified Appraisal of the Property of approximately $5,388,000, and no less than $5,118,600, and Plaintiff agreed to sell the Property to a qualified charitable organization for $2,000,000, with Welfont receiving a commission of $62,403 commission. (Id. at PageID 9.) The Purchase Agreement was later amended to increase the purchase price to $2,160,000. (Id.)

Welfont introduced Plaintiff to Defendant Tax Appraisal Group, LLC ("TAG") and its manager, Defendant Lynda Scull. (Id.) According to Plaintiff, Scull exercised complete dominion and control over TAG's finances, policies, and business practices and used TAG as a

conduit for performing her business. (Id. at PageID 20.) Plaintiff also alleges that TAG is grossly undercapitalized. (Id.)

Plaintiff and TAG entered into an agreement whereby Plaintiff paid TAG $1,000 to obtain a Qualified Appraisal of the Property. (Id. at PageID 9.) TAG coordinated with Bryant Asset Advisors, LLC ("BAA"),[1] which appraised the Property at $4,755,000. (Id. at PageID 10.) In reliance on the promises made by Defendants and BAA's appraisal, Plaintiff sold the Property to a charitable organization in May 2019 for $2,160,000. (Id. at PageID 11.) Plaintiff claimed a deduction on its 2019 tax returns of $2,595,000 from the sale, which was the difference between BAA's appraisal and the sale price. (Id.)

Unbeknownst to Plaintiff, on the same day it sold the Property, Hickory Hill Properties, LLC, an alter ego of Welfont, purchased the Property for $2,650,000 from the charitable organization, effectively undermining the fair market value set forth in BAA's appraisal. (Id.)

The Internal Revenue Service audited Plaintiff's 2019 tax returns and determined, among other things, that: (1) BAA's appraisal was not a Qualified Appraisal; (2) the Property had a fair market value of $2,650,000; (3) Plaintiff's deduction contribution from the sale of the Property was reduced from $2,595,000 to $490,000; and (4) Plaintiff owed at least $571,765 in taxes, fees, expenses and costs. (Id. at PageID 11–13.)

Plaintiff thereafter filed this action, alleging seven claims against Defendants: (1) breach of contract; (2) negligent misrepresentation; (3) fraud/constructive fraud; (4) negligence; (5) violation of the Tennessee Consumer Protection Act; (6) veil piercing; and (7) civil conspiracy.

---

[1] BAA and Andrew Bryant were previously Defendants here but have been dismissed. (ECF Nos. 30 & 31.)

## **STANDARD**

If a defendant fails to plead or otherwise defend, and that failure is shown, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). Following entry of default, if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—with an affidavit showing the amount due—must enter judgment for that amount and costs. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must seek a default judgment from the court by motion. Fed. R. Civ. P. 55(b)(2). The court assesses the appropriate way to determine the judgment. See id. The Court has discretion to determine liability while reserving the issue of damages. See Flynn v. People's Choice Home Loans, Inc., 440 F. App'x 452, 454 (6th Cir. 2011) (noting that the district court granted the plaintiff's motion for default judgment, entered default judgment against the defendants, and referred the matter to a magistrate judge for a determination of damages).

Where the court is to determine damages, it considers the well-pleaded factual allegations in the complaint regarding liability as admitted, but damages must still be shown. Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110–11 (6th Cir. 1995). Specifically, although the factual allegations in the complaint are admitted, the Court must still determine "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). The standard to be applied is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (citing Wooten v. McDonald Transit Assocs., Inc., 775 F.3d 689, 695 (5th Cir. 2015)). Default judgment should be denied where a complaint fails to state a claim. Harrison v.

4

Bailey, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. 1997) (unpublished table decision) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). It is a plaintiff's burden to show that his well-pleaded factual allegations admitted by a defaulting defendant establish liability for each cause of action asserted for which the plaintiff seeks default judgment. Nat'l Auto Grp., Inc. v. Van Devere, Inc., No. 5:20-cv-2543, 2021 WL 1857143, at *4 (N.D. Ohio May 10, 2021) (collecting cases).

## ANALYSIS

The Motion raises two issues for the Court: (1) whether the Complaint, taking its factual allegations as true by way of Defendants' default, establishes that Plaintiff adequately stated its claims against Defendants, and (2) whether Plaintiff has proven its damages. The Court answers the first question in the affirmative but reserves the second for another day. As explained below, the Court finds that Plaintiff has proven all of the claims alleged against Defendants in the Complaint.

**I.    Breach of Contract**

Under Tennessee law, a plaintiff asserting a breach of contract must prove: (1) the existence of a valid and enforceable contract; (2) a deficiency in the performance amounting to a breach; and (3) damages caused by the breach. Alsbrook v. Concorde Career Colls., Inc., 469 F. Supp. 3d 805, 851 (W.D. Tenn. 2020).

Plaintiff and Welfont entered into the Real Estate Purchase Agreement, in which Welfont agreed to obtain a Qualified Appraisal of the Property. Similarly, TAG and Plaintiff entered into an agreement in which TAG agreed to obtain a Qualified Appraisal of the Property. However, as the IRS ultimately determined, BAA's appraisal was not a Qualified Appraisal. Because BAA's appraisal was not a Qualified Appraisal, Plaintiff was entitled to a much lower tax deduction than

it otherwise would have been and faces a higher tax burden than it otherwise would have. Thus, Plaintiff states a claim against Defendants for breach of contract.

## II. Negligent Misrepresentation

Under Tennessee law, a plaintiff claiming negligent misrepresentation must prove: (1) the defendant, acting in the course of his business, or in a transaction in which he has a pecuniary interest; (2) supplies faulty information meant to guide others in their business transactions; (3) while failing to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies on the information. Dixon v. Producers Agric. Ins. Co., 198 F. Supp. 3d 832, 837 (M.D. Tenn. 2016).

Welfont and TAG, acting in their course of business, represented to Plaintiff that the Property had a fair market value of approximately $5,388,000 and that they would be able to obtain a Qualified Appraisal showing such an overstated value. They had a pecuniary interest in the transaction, which became clear when Welfont's alter ego purchased the property later on the same day that Plaintiff sold it. Defendants knew their representations were materially false and that Plaintiff would reasonably rely on these representations. Thus, Plaintiff states a claim for negligent misrepresentation.

## III. Fraud/Constructive Fraud

A plaintiff asserting fraud must prove six elements: (1) the defendant made a representation of fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) the plaintiff reasonably relied on the misrepresented fact; and (6) the plaintiff suffered damage as a result of the misrepresentation. Bridgestone Am.'s, Inc. v. Int'l

Bus. Machs. Corp., 172 F. Supp. 3d 1007, 1014 (M.D. Tenn. 2016).  Constructive fraud is "essentially fraud without the element of intent." Id.

Defendants knowingly made the false representation to Plaintiff that they would obtain a Qualified Appraisal, a material fact pertaining to the value of the Property.  Relying on that representation, Plaintiff sold the Property at below market value, suffering economic loss as a result.  Plaintiff thus states a claim for fraud and constructive fraud.

## IV. Negligence

Negligence consists of: (1) a duty of care owed by the defendant to the plaintiff; (2) breach of that duty by the defendant; (3) injury; (4) causation in fact; and (5) proximate causation.  Alsbrook, 469 F. Supp. 3d at 851.

Once they agreed to do so, Welfont and TAG owed Plaintiff a duty to use reasonable care to ensure Plaintiff received a Qualified Appraisal.  However, they failed to do so and were the cause of the economic loss suffered by Plaintiff.  Plaintiff thus states a negligence claim.

## V. Tennessee Consumer Protection Act

The TCPA prohibits the use of "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a).  A plaintiff pleading a TCPA claim must establish: (1) loss of money or property; (2) resulting from an unfair or deceptive act or practice; and (3) that is declared unlawful under the TCPA.  Bridgestone Am.'s, Inc., 172 F. Supp. 3d at 1019.  Under the TCPA, a deceptive act or practice is a "'material representation, practice, or omission likely to mislead . . . reasonable consumers' to their detriment." Id. (quoting Fayne v. Vincent, 301 S.W.3d 162, 177 (Tenn. 2009)).

Welfont and TAG knowingly made false representations to Plaintiff regarding the Qualified Appraisal, which constitutes a material representation likely to mislead a reasonable

7

consumer. Plaintiff suffered economic loss as a result of this deceptive act. Thus, Plaintiff states a TCPA claim.

## VI. Veil Piercing

In considering whether to pierce TAG's corporate veil, the Court must consider several factors, including:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

Oceanics Schs., Inc. v. Barbour, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). A plaintiff need not prove that all factors weigh in its favor. Id.

Here, Plaintiff alleges that Scull exercised complete dominion and control over TAG's finances, policies, and business practices, such that TAG had no separate mind, will, or existence of its own, thus functioning as an instrumentality of Scull. TAG was undercapitalized and diverted all of its earnings and tangible assets to Scull. The Court therefore finds that Plaintiff has proven that TAG's corporate veil should be pierced and its liability is also Scull's liability.[2]

## VII. Civil Conspiracy

A civil conspiracy is "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a

---

[2] Plaintiff does not address the question of whether it may pierce an LLC's veil. While the doctrine traditionally applies to corporations, Tennessee courts have held that it applies to LLCs as well. Edmunds v. Delta Partners, L.L.C., 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012).

lawful purpose by unlawful means, which results in damage to the plaintiff." Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 185–86 (Tenn. Ct. App. 2007).

Plaintiff alleges that Defendants acted in concert to falsely represent that they would obtain a Qualified Appraisal in order to entice Plaintiff to sell the Property below market value, causing Plaintiff economic loss. Plaintiff has thus established a civil conspiracy.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has proven liability on all its claims. The Court makes no ruling on damages at this time, reserving the issue until Plaintiff's Administrative Appeal before the IRS concludes. At that time, Plaintiff may file a supplemental Motion for Default Judgment. Therefore, the Motion is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

**IT IS SO ORDERED**, this 19th day of September, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE