IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AMERICAN PROPERTIES, CO. G.P., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:22-cv-02329-SHL-tmp |
| THE WELFONT GROUP, LLC, TAX APPRAISAL GROUP, LLC, and LYNDA SCULL, | ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART
SUPPLEMENTAL MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff American Properties, Co. G.P.'s Supplemental Motion for Default Judgment (ECF No. 70), filed June 23, 2025. On October 12, 2022, default was granted as to Defendants The Welfont Group, LLC ("Welfont"), Tax Appraisal Group, LLC ("TAG"), and Lynda Scull (together, "Defendants")[1], following multiple warnings of their need to participate in this litigation. (ECF No. 40 ("Clerk's Entry of Default").) On September 19, 2023, a default judgment was granted, again based on those same defendants' failure to participate. (ECF No. 66.) However, the amount of the judgment could not be ascertained because of an appeal pending at the time before the Internal Revenue Services ("IRS"). (See id.)

Now, Plaintiff seeks a default judgment in the amount of $7,107,296, comprised of $1,751,824 in actual damages, $5,255,472 in treble damages pursuant to the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq. ("TCPA"), and $100,000 in

---

[1] Two additional defendants did appear, and judgment has been entered as to them. (See ECF No. 31.)

attorney's fees pursuant to the TCPA, against Defendants jointly and severally. (ECF No. 70 at PageID 469.) Defendants did not respond.

For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[2]

In July 2018, Plaintiff was looking to sell a piece of real property ("the Property") in Memphis, Tennessee, when Welfont presented an unconventional offer. (ECF No. 1 at PageID 7.) Plaintiff had been asking $3,995,000 for the Property, but Welfont had something else in mind. (Id. at PageID 6.) If Plaintiff could get a higher-value appraisal that the IRS would accept—a "Qualified Appraisal"—and then sell the Property to a qualified charitable organization for below that amount, Welfont explained, Plaintiff would receive a substantial tax deduction worth the difference between the two. (Id.) Plaintiff agreed, and so, to effectuate the sale, the Parties entered into a Real Estate Purchase Agreement. (Id. at PageID 9.) According to the Agreement, Welfont would obtain a Qualified Appraisal of the Property of approximately $5,388,000 and Plaintiff would sell the Property to a qualified charitable organization for $2,000,000.[3] (Id.) Welfont would also receive a commission of $62,403. (Id.)

Welfont then introduced Plaintiff to TAG, which contracted with Plaintiff to provide a Qualified Appraisal of the Property for a $1,000 fee. (Id. at PageID 9.) Lynda Scull, TAG's manager, exercised complete dominion and control over TAG's finances, policies, and business practices. (Id. at PageID 20.) As Plaintiff would later discover, not only was TAG "grossly

---

[2] These facts are contained in Plaintiff's complaint, and are accepted as true by virtue of Defendants' default. See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110–11 (6th Cir. 1995).

[3] The Purchase Agreement was later amended to increase the purchase price to $2,160,000. (Id.)

2

undercapitalized," diverting its earnings and assets directly to Scull, but its appraisal was not even an actual Qualified Appraisal. (Id. at 12, 20.)

Relying on the three Defendants' promises and appraisal, Plaintiff sold the Property to a charitable organization in May 2019 for $2,160,000, and claimed a deduction of $2,595,000 on its 2019 tax return. (Id. at PageID 11.) Unbeknownst to Plaintiff, however, on the same day it sold the Property, an alter ego of Welfont purchased the Property from the charity for only $2,650,000—radically undermining the appraised value of $5,388,000. (Id.)

The IRS noticed. In a later audit of Plaintiff's 2019 tax return, the IRS found that (1) the appraisal Plaintiff relied on was not a Qualified Appraisal; (2) the Property had a fair market value of $2,650,000, lower than Plaintiff expected; (3) Plaintiff's deduction contribution from the sale of the Property was reduced from $2,595,000 to a mere $490,000; and (4) Plaintiff owed at least $571,765 in taxes, fees, expenses, and costs. (Id. at PageID 11–13.)

Plaintiff filed suit against Defendants, alleging (1) breach of contract; (2) negligent misrepresentation; (3) fraud or constructive fraud; (4) negligence; (5) violation of the TCPA; (6) veil piercing; and (7) civil conspiracy. (ECF No. 1.) Despite service, Defendants never appeared in this action. Because of Defendants' lack of appearance, the Clerk entered default (ECF No. 40), and Plaintiff filed its motion for default judgment (ECF No. 43). Based on Plaintiff's motion and a hearing on January 19, 2023, the Court granted in part a default judgment against Defendants, finding them liable to Plaintiff for all claims. (ECF No. 66.)

As discussed at the hearing, the damages resulting from Defendants' actions equal the tax liability imposed on Plaintiff. (See id.) However, at the time of the hearing, Plaintiff was appealing that tax liability, and so the Court held in abeyance the calculation of damages for the default judgment. (See id.) A year and a half passed.

Then, after the Court requested on May 12, 2025, to be apprised of the status of the administrative appeal (ECF No. 67), Plaintiff provided an update a week later (ECF No. 68). The IRS had issued a Notice of Final Partnership Adjustment on August 28, 2024, determining that Plaintiff owed underpayments of $1,088,344 and $217,669 in penalties as of that date. (Id. at PageID 454; see also ECF No. 68-1.) Because Plaintiff disagreed with some of the IRS' methodologies and calculations, it filed a Petition for Readjustment in the United States Tax Court. (ECF No. 68 at PageID 454–55.) Instead of waiting for resolution in the Tax Court, however, given the length of litigation, the Court ordered Plaintiff to file a supplemental motion for default judgment.[4] (ECF No. 69.) Plaintiff did so on June 23, 2025 (see ECF No. 70), and now the Motion is ripe for review.

## ANALYSIS

When a party defaults, it "effectively admits all well-pleaded allegations in the Complaint." BMO Bank, N.A. v. Len Snyder Trucking, LLC, No. 1:24-CV-01089-STA-jay, 2024 WL 4469114, at *1 (W.D. Tenn. Sept. 16, 2024), report and recommendation adopted, No. 1:24-CV-01089-STA-jay, 2024 WL 4467532 (W.D. Tenn. Oct. 10, 2024) (citing Visioneering Constr. v. U.S. Fid. and Guar., 661 F.2d 119, 124 (6th Cir. 1981)). However, "'a default admits only the defendant's liability' but 'the amount of damages must be proved.'" New London Tobacco Mkt., Inc. v. Ky. Fuel Corp., 44 F.4th 393, 403 (6th Cir. 2022) (quoting Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995)).

Plaintiff seeks damages for each count in the complaint, as discussed below.

---

[4] The Court instructed Plaintiff that, should the Tax Court Appeal result in a favorable outcome or a change in circumstances, Plaintiff could address that issue at a later point. (ECF No. 69 at PageID 466.)

I.  **Contract Damages**

First, the Court found Welfont and TAG liable for breach of two contracts—the Purchase Agreement with Welfont, and the Contract with TAG. (ECF No. 66 at PageID 448–49.)

In Tennessee, the default measure of expectation damages is "awarding the party the benefit of its bargain." Mueller Brass Co. v. Crompton, No. 2:20-CV-2496-SHL-ATC, 2024 WL 2303953, at *3 (W.D. Tenn. May 21, 2024) (quoting Alsbrook v. Concorde Career Colls., Inc., 469 F. Supp. 3d 805, 826 (W.D. Tenn. 2020)). "Damages in breach of contract cases are nothing more than payment in money for actual losses caused by the breach of contract." Alsbrook, 469 F. Supp. 3d at 856 (citing Custom Built Homes v. G.S. Hinsen Co., No. 01A01-9511-CV-00513, 1998 WL 960287, at *4 (Tenn. Ct. App. Feb. 6, 1998)).

In the Purchase Agreement, Welfont agreed to a transaction that would result in a substantial tax deduction for Plaintiff. To support that transaction, TAG agreed to obtain a Qualified Appraisal of the Property of approximately $5,388,000. (ECF No. 71 at PageID 479.) Because Plaintiff suffered actual losses from each breach equal to the tax liability plus penalties, damages compensating for the loss associated with each contract are appropriate.

II.  **Tort Damages**

  A.  *Fraud, Constructive Fraud, and Negligent Misrepresentation*

Welfont and TAG are liable to Plaintiff for fraud, constructive fraud, and negligent misrepresentation, and thus damages are appropriate for these claims also. (ECF No. 66 at PageID 449–50.) Both Welfont and TAG represented to Plaintiff that the Property had a fair market value of approximately $5,388,000, and that they could obtain a Qualified Appraisal for that value. (ECF No. 71 at PageID 479.) They falsely represented that Plaintiff could obtain a tax deduction based on the difference between the fair market value and the price paid by a

5

qualified charitable buyer. (Id.) Plaintiff reasonably relied on Defendants' false representations, both negligent and intentional, and suffered loss. (Id. at PageID 480.) Thus, Plaintiff is eligible to receive damages based on the pecuniary loss that it suffered from the misrepresentations.

### B. Negligence

Defendants are liable to Plaintiff for negligence, for they owed Plaintiff a duty to use reasonable care to ensure Plaintiff received a Qualified Appraisal, failed to do so, and caused Plaintiff to suffer economic loss. (ECF No. 66 at PageID 450.) A plaintiff injured by another person's negligence is entitled to compensatory damages under Tennessee law. Turnage v. Oldham, 346 F. Supp. 3d 1141, 1156 (W.D. Tenn. 2018) (citing Dedmon v. Steelman, 535 S.W.3d 431, 437 (Tenn. 2017)). These can be economic damages, compensating for the actual pecuniary losses resulting from the wrongful conduct. Id. (citing Meals ex rel. Meals v. Ford Motor Co., 417 S.W.3d 414, 419–20 (Tenn. 2013)). Plaintiff has suffered quantifiable economic damages from not receiving a Qualified Appraisal and is entitled to receive compensation.

### C. Violations of the TCPA

The Court found Defendants liable for violating the TCPA by knowingly making false material representations to Plaintiff, a reasonable consumer, about the Qualified Appraisal and causing Plaintiff to suffer economic loss. (ECF No. 66 at PageID 450–51.) Under the TCPA, Plaintiff can recover damages for its economic loss. See Tenn. Code Ann. § 47-18-109.

## III. Theories of Liability

### A. Veil Piercing

Because TAG was an alter ego of Scull, TAG's corporate veil was pierced, and its liability is also Scull's liability. (ECF No. 66 at PageID 451.) Scull is thus liable for damages where TAG is implicated.

### B. Civil Conspiracy

Defendants engaged in a civil conspiracy, for they acted in concert to falsely represent that they would obtain a Qualified Appraisal to entice Plaintiff to sell the Property below market value and cause Plaintiff economic loss. (Id. at PageID 450–51.) "Once the evidence establishes the existence of a civil conspiracy, the members of the conspiracy are jointly and severally liable for all the damages caused by the other conspirators, even if they did not commit tortious or wrongful acts themselves." Stanfill v. Hardney, No. M200402768COAR3CV, 2007 WL 2827498, at *7 (Tenn. Ct. App. Sept. 27, 2007). Thus, Plaintiff can pursue damages against Defendants on these grounds.

## IV. Calculation of Damages

Based on Defendants' liability, Plaintiff seeks actual damages, treble damages, and reasonable attorney's fees. (See ECF No. 71 at PageID 485.) Because of the existence of a civil conspiracy and the piercing of the TAG corporate veil to reach Scull, each Defendant is jointly and severally liable to Plaintiff for breach of contract, negligent misrepresentation, fraud and constructive fraud, negligence, and violations of the TCPA.

According to the Notice of Final Partnership Adjustment, the IRS seeks $1,306,013 from Plaintiff. (ECF No. 71 at PageID 485.) This amount is comprised of the Preliminary Imputed Underpayment of $1,088,344 plus $217,669 in penalties. (Id.) Additionally, through June 23, 2025, interest on the claimed amount was approximately $445,811. (Id.) This amount has continued to accrue, currently at 7.0%, compounded daily. (Id.) Given this determination from the IRS, Plaintiff seeks $1,751,824 in actual damages. (Id.) This amount is warranted, and Defendants are jointly and severally liable for these damages.

Plaintiff also argues that Defendants are jointly and severally liable to Plaintiff for treble damages under the TCPA. (Id.) If the unfair or deceptive act was "willful and knowing," the TCPA allows for an award of three times the actual damages sustained. See Tenn. Code Ann. § 47-18-109(a)(3). Given the nature of the fraud, treble damages are appropriate here. See id. § 109(a)(4). Plaintiff's sought-after amount of treble damages—$5,255,472—is appropriate, and all Defendants are jointly and severally liable for that amount. Thus, Defendants are liable for $1,751,824 in actual damages and $5,255,472 in treble damages, totaling $7,007,296.

In addition to these damages, Plaintiff seeks attorney's fees of $100,000, which it purports to be "reasonable." (ECF No. 71 at PageID 485.) Upon the finding of a TCPA violation, "reasonable attorney's fees and costs" are available. Tenn. Code Ann. § 47-18-109(e)(1). "[T]he 'most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" BKB Props., LLC v. SunTrust Bank, Civil Action No. 3:08-cv-00529, 2010 WL 200750, at *6 (M.D. Tenn. Jan. 13, 2010) (quoting Webb. v. Bd. of Educ. of Dyer Co., 471 U.S. 234, 242 (1985)). The party seeking attorney's fees has the burden of producing documentation to support the attorney's fee award, such as the hours worked and rates used. Id.

Although Plaintiff is entitled to attorney's fees, the Court cannot evaluate if the sought-after amount of $100,000 is reasonable, as no documentation of the hours Plaintiff's counsel worked or a reasonable hourly rate has been submitted. Although the Court suspects that the amount sought is a modest one, Plaintiff must submit a separate motion with the sought-after information to obtain attorney's fees.

## CONCLUSION

For the preceding reasons, Defendants Welfont, TAG, and Scull are jointly and severally liable for damages resulting from Plaintiff's claims. Defendants are responsible for $1,751,824 in actual damages and $5,255,472 in treble damages, totaling $7,007,296. However, at this time, no attorney's fees will be awarded. Thus, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Should Plaintiff wish to file a motion for attorney's fees, it must do so by no later than **Friday, September 26, 2025**.

**IT IS SO ORDERED**, this 10th day of September, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE